COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-146-CR

 

 

TODD WAYNE SWAFFAR                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY
CRIMINAL COURT NO. 2 OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








A jury found Appellant Todd Wayne Swaffar guilty
of driving while intoxicated (DWI), and the trial court sentenced him to
fifteen days= confinement and a $2,000
fine.  On appeal, Appellant contends in a
single point that the trial court erred by denying his motion to suppress.  Because we hold that no reasonable suspicion
supported the stop and that the State did not prove that the stop was justified
as a community caretaking function, we reverse the trial court=s
judgment and remand this case to the trial court for further proceedings
consistent with this opinion. 

I.  Background Facts

According to his testimony, during the late night
hours of May 20, 2006, Officer Jose Flores of the Lewisville Police Department A[r]eceived
a dispatch on a possible disturbance that occurred at a location off of Pier
121 Marina.  We were advised that a
caller called in saying there was a male pushing around a female in the parking
lot.@  The caller refused to give her name and
insisted on remaining anonymous.

Officer Flores testified, A[W]e
were told that [the anonymous call] was related to a maroon vehicle that was
occupied by a male and a female, that they had just left the area after the
dispatch came out.@ 
Officer Flores was familiar with the area in which the two people were
purportedly located and knew that, because of road construction, there was only
one way into and out of the parking lot. 
Therefore, Officer Flores, who was already located nearby, drove down
the road toward the parking lot, knowing that if a vehicle was leaving from the
area he would quickly pass it.  Within
one minute of receiving the dispatch call, Officer Flores passed a maroon Honda
four-door car with a male driver and a female passenger exiting the area.  He turned around and followed the car.  








When he reached the vehicle, Officer Flores began
to videotape it because he Awas
advised also that the driver was possibly intoxicated.@  Officer Flores could not see inside the car
with great detail because it was too dark. 
He could tell that the man and woman were Aoccupied,@ but he saw
no fighting.  While he was following the
car, Officer Flores saw the car swerve within its own lane of traffic, but he
did not notice the driver commit any traffic infractions, although he testified
that when he later reviewed the in-car video, he noticed that Appellant had run
a stop sign.  

Officer Flores continued to follow the car, and
when Appellant reached Standridge Drive to travel toward Highway 121, the
officer activated his roof lights because he wanted to stop the car before it
got to Highway 121.  When the car stopped
at a red light, neither the driver nor the passenger tried to get out of the
car.  

Officer Flores followed the car another 1,000
feet after he activated his lights.  When
the car reached the light at Highway 121, Officer Flores hit his siren a few
times, and Appellant eventually stopped after he had traveled another 1,000
feet.  








Despite the fact that Officer Flores made no
effort to stop the car to investigate the woman=s safety
until after he had turned on his camera and followed the car from the original
location off Pier 121 Marina to Highway 121 because he had been told the driver
might be intoxicated, the officer testified,

Q.     Now, Officer, when you
approached the vehicle, was it your intent to perform a DWI investigation?

 

A.     No.  My intent for the stop was in relation to the
disturbance.

 

Q.     Okay.  And again remind the Court what type of
disturbance was it?

 

A.     It was possibly a domestic
disturbance between a male and a female.

 

Q.     Officer, were you
concerned for the people=s welfare inside the
vehicle?

 

A.     Yes, sir. 

 

When the car finally did pull over, the officer
approached the vehicle=s driver and immediately
detected a moderate odor of alcohol on his breath.  The car=s driver
was Appellant.  

At trial, Appellant moved to suppress evidence of
the stop, arguing that the anonymous tip along with the officer=s
failure to independently observe Appellant commit any traffic law violations
provided an insufficient basis to initiate the stop.  The trial court denied Appellant=s
motion.  








After
the trial court=s ruling, a jury heard the
evidence and convicted Appellant of DWI, and the trial court sentenced
him.  Appellant now appeals the trial
court=s denial
of his motion to suppress.  In his sole
point, he contends that the trial court erred by denying his motion to suppress
when the arresting officer detained him on the sole basis of an anonymous tip
which was not sufficiently corroborated.

II.  Standard
of Review








We
review a trial court=s ruling on a motion to suppress
evidence under a bifurcated standard of review.[1]  In reviewing the trial court=s
decision, we do not engage in our own factual review.[2]  The trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony.[3]  Therefore, we give almost total deference to
the trial court=s rulings on (1) questions of
historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.[4]  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court=s rulings on those questions de
novo.[5]








Stated
another way, when reviewing the trial court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.[6]  When the record is silent on the reasons for
the trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.[7]
We then review the trial court=s legal
ruling de novo unless the implied fact findings supported by the record are
also dispositive of the legal ruling.[8]        We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.[9]

III.  The Stop
is Not Justified on the Basis of Reasonable Suspicion








A
detention, as opposed to an arrest, may be justified on less than probable
cause if a person is reasonably suspected of criminal activity based on
specific, articulable facts.[10]  An officer conducts a lawful temporary
detention when he or she has reasonable suspicion to believe that an individual
is violating the law.[11]  Reasonable suspicion exists when, based on
the totality of the circumstances, the officer has specific, articulable facts
that when combined with rational inferences from those facts would lead him to
reasonably conclude that a particular person is, has been, or soon will be
engaged in criminal activity.[12]  This is an objective standard that disregards
any subjective intent of the officer making the stop and looks solely to
whether an objective basis for the stop exists.[13]  In determining whether reasonable suspicion
supports a stop, we look only at those facts known to the officer at the
inception of the stop.[14]

In the
case before us, an anonymous tip triggered the police investigation. As our
sister court in Austin has explained,

An anonymous tip usually
will justify the initiation of a police investigation.  However, an anonymous tip or telephone call
alone rarely will establish the requisite level of suspicion necessary to
justify an investigative detention. 
Normally, there must be some further indicia of reliabilityCadditional facts from
which a police officer may reasonably conclude that the tip is reliable and a
detention is justified.  To justify a
police officer=s conclusion that a crime
has been or is being committed, the officer generally cannot rely alone on a
police broadcast of an anonymous phone call to establish probable cause or
reasonable suspicion.   

 

When an investigative
detention is based solely on an anonymous tip, the court often has no way of
evaluating the reliability of the information from the anonymous source.  If an anonymous tip has a low degree of
reliability, more information will be required to establish the requisite level
of suspicion to justify an investigative detention.  An anonymous tip may, however, be sufficient
if it contains sufficient Aindicia of reliability@ or if some aspects of it
are sufficiently corroborated.

 

An officer=s prior knowledge, his
experience, and his corroboration of the details of the tip may be considered
in giving the anonymous tip the weight it deserves.  Mere corroboration of details, however, that
are easily obtainable at the time the information is provided will not support
a finding of probable cause nor furnish the basis for reasonable suspicion.

 








In Glenn v. State, the [Amarillo] court found that Athe
following are significant in determining whether reasonable suspicion exists
for a temporary detention based upon information from an unknown tipster:  (1) accurately predicting future behavior of
third parties;  (2) corroboration of a
detail linking the accused to the stated criminal activity;  and (3) a particularized and objective reason
to suspect the accused.@[15]

A
tipster=s
accurate description of a person=s looks
and whereabouts may help the police correctly identify the person as the one
whom the tipster intended to accuse, but it does nothing to show that the
tipster had information that the person was involved in criminal activity.[16]

The
caller in this case refused to give her name and insisted on remaining
anonymous, although Officer Flores suggested that the police somehow found out
her name.  It is unclear from his
testimony whether the police learned the name of the actual caller or only the
name of the person connected with the telephone on which the call was made.  

The
anonymous call was not made by someone who remained on the scene or who
remained there long enough to make sure that the officer detained the correct
vehicle.  To Officer Flores=s
knowledge, the caller did not make herself readily available to be called to
court, and he did not have her telephone number, her address, or a description
of her.  








The
caller did not provide a license plate number, a make of car, or a description
of the people involved except gender and number.  Nothing in the tip suggested a relationship
between the man and woman that would satisfy the requisites of a domestic
violence assault.[17]  Indeed, Officer Flores described the caller=s
description of the behavior she viewed as only a Apossible
assault.@  On cross-examination, he testified,

Q.     Sure.  Okay.  I guess what I=m getting at is, you didn=t have a specific report,
hey, I just saw a man hit a woman in the face, I saw a man push a woman to the
ground and kick her, something like that?

 

A.     Correct.

 

Q.     You had something to investigate, right?  But you didn=t have a specific report
of a crime?

 

A.     True.

We
therefore hold that the anonymous tip was insufficient to establish reasonable
suspicion for the stop.








Further,
Officer Flores did not observe any fighting. 
When the car stopped at a red light, neither Appellant nor the passenger
tried to get out of the car. 
Additionally, Officer Flores did not see Appellant commit any traffic
violations before the stop.  The officer=s
testimony that when he reviewed the in-car videotape, he noticed that Appellant
had run a stop sign is of no significance because the officer admitted that he
did not see Appellant run the stop sign. 
We therefore cannot consider this evidence in determining whether the
officer had reasonable suspicion to stop Appellant.[18]  While the officer did testify that he saw
Appellant swerve within his own lane and that the amount of time that Appellant
used to stop in response to the officer=s signal
and siren was not normal, these observations do not rise to the level of
reasonable suspicion.  

Based on
the totality of the circumstances, we hold that Officer Flores=s
independent observations coupled with the anonymous tip did not establish
reasonable suspicion for the stop.  

IV.  The Stop is Not Justified on the Basis

 of the Community Caretaking Doctrine

 








A[T]he
Fourth Amendment does not bar police officers from making warrantless entries
and searches when they reasonably believe that a person within is in need of
immediate aid.@[19]  Therefore, Aeven
without reasonable suspicion or probable cause that an offense has been
committed, a police officer may reasonably seize an individual through the
exercise of his community caretaking function.@[20]  Thus, under the community caretaking
doctrine, A[a]s part of an officer=s duty
to >serve
and protect,= an officer 'may stop and
assist an individual whom a reasonable person, given the totality of the
circumstances, would believe is in need of help.=@[21]  Determining whether an officer has properly
invoked his community caretaking function is a two-step process.[22]  First, the reviewing court must determine
whether the officer was primarily motivated by a community caretaking purpose.[23]  Second, the court must determine whether the
officer=s belief
that his assistance was required was reasonable.[24]








The
first step recognizes that the community caretaking function is Atotally
divorced from the detection, investigation, or acquisition of evidence relating
to a violation of a criminal statute.@[25]  If the reviewing court determines that the
officer was primarily motivated by a non-community caretaking purpose, then the
community caretaking doctrine is inapplicable to justify his intrusion.[26]

When he
reached the vehicle, Officer Flores began to record it as he followed it, not
because he was concerned for the safety of the woman, but because he was
advised by the anonymous caller that the driver was possibly intoxicated.  Although Officer Flores could have stopped
the vehicle immediately to check on the welfare of the woman, he chose not to
do so.  Instead, he followed the vehicle
with his camera recording Appellant=s
driving.        Taking as true everything that Officer Flores said, he was not
concerned that Appellant or his passenger was in need of assistance.  He was concerned that an assault had
occurred, and he stopped Appellant to investigate an assault called in by an
anonymous caller.  Officer Flores testified
on direct examination, 

Q.     Now, Officer, when you approached that vehicle, was it your
intent to perform a DWI investigation?

 

A.     No.  My intent for the
stop was in relation to the disturbance.

 

Q.     Okay.  And again remind
the court what type of disturbance was it?

 

A.     It was possibly a domestic disturbance between a male and a
female.

 








Q.     Officer, were you concerned for the people=s welfare inside the
vehicle?

 

A.     Yes, sir.

On cross-examination, Officer Flores testified,

 

Q.     Officer, your reason for stopping that car was to investigate a
possible assault; is that correct?

 

A.     Yes, sir.

 

Q.     And you had no other reason to stop that car, correct?

 

A.     Correct.

 

. . . .

 

Q.     Okay.  And in this case
you did not stop him for running a stop sign, you stopped him to investigate an
assault?

 

A.     Correct, sir.

 

Q.     And the assault was C there was a call in by what you said was an
anonymous caller; is that correct?

 

A.     Yes.

 

Q.     And what was relayed to you was that the anonymous caller had
said there that [sic] was a man pushing around a womanC 

 

A.     Yes.

. . .
.

Q.     But that=s not a
specific description of an assault, is it?

A.     It=s not
specifically stating what it is.








Q.     I mean a man could be pushing around a woman for reasons that
are not a crime?  I mean it might not add
up to a crime, right?

 

. . . .

A.     Yes.  

Officer
Flores testified that he stopped Appellant to investigate an assault and, in
response to the prosecutor=s
leading question regarding the officer=s Aprimary
concern when [he] approached the vehicle,@
responded that it was A[t]o make sure that the people
in the vehicle were not involved in an altercation.@  By the time he finally pulled the maroon car
over, he knew that any assault was over. 
He had seen inside the car, determined that a man and a woman were
inside, and knew that, although they were Aoccupied,@ they
were not fighting.  After the officer
stopped the car, he investigated the purported assault and learned that no
assault had occurred.  

The
community caretaking  function must be Atotally
divorced from the detection, investigation, or acquisition of evidence relating
to the violation of a criminal statute.@[27]  Because the evidence shows that Officer
Flores was investigating a crime and that the criminal investigation was in
fact the primary purpose for the stop, the community caretaking doctrine cannot
justify the stop.  We sustain Appellant=s sole
point.








V.  Conclusion

Because
we hold that the stop was not justified by reasonable suspicion or the
community caretaking doctrine, we reverse the trial court=s
judgment and remand this case to the trial court for proceedings consistent
with this opinion.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL M: DAUPHINOT, HOLMAN, and WALKER, JJ.

 

PUBLISH

DELIVERED:
June 12, 2008

 











[1]Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).





[2]Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no
pet.).  





[3]Wiede v. State, 214 S.W.3d 17, 24B25 (Tex. Crim. App.
2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified
on other grounds by State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).






[4]Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108B09 (Tex. Crim. App. 2006); Johnson v. State,
68 S.W.3d 644, 652B53 (Tex. Crim. App.
2002).  





[5]Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652B53.





[6]Wiede, 214 S.W.3d at 24; State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  





[7]Kelly, 204 S.W.3d at 819; see
Amador, 221 S.W.3d at 673; Wiede, 214 S.W.3d at 25. 





[8]Kelly, 204 S.W.3d at 819.





[9]State v. Stevens, 235 S.W.3d 736, 740
(Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).





[10]Terry v. Ohio, 392 U.S. 1, 22, 88 S.
Ct. 1868, 1880 (1968);  Carmouche v.
State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000).





[11]Ford v. State, 158 S.W.3d 488, 492
(Tex. Crim. App. 2005).





[12]Id. at 492B93.





[13]Id. at 492. 





[14]State v. Griffey, 241 S.W.3d 700, 704
(Tex. App.CAustin 2007, pet. ref=d).





[15]Davis v. State, 989 S.W.2d 859, 863B864 (Tex. App.CAustin 1999, pet. ref=d) (citations omitted).





[16]Dowler v. State, 44 S.W.3d 666, 670
(Tex. App.CAustin 2001, pet. ref=d).





[17]See Tex. Penal Code Ann. ' 22.01 (Vernon 2007).





[18]See Griffey, 241 S.W.3d at 704.





[19]Mincey v. Arizona, 437 U.S. 385, 392, 98
S. Ct. 2408, 2413 (1978).





[20]Corbin v. State, 85 S.W.3d 272, 276
(Tex. Crim. App. 2002); Wright v. State, 7 S.W.3d 148, 151B52 (Tex. Crim. App.
1999).





[21]Corbin, 85 S.W.3d at 276
(quoting Wright, 7 S.W.3d at 151B52).





[22]See id. at 277.





[23]Id.





[24]Id.





[25]Cady v. Dombrowski, 413 U.S. 433, 441, 93
S. Ct. 2523, 2528 (1973). 





[26]Corbin, 85 S.W.3d at 277.  

 





[27]Cady, 413 U.S. at 441, 93 S.
Ct. at 2528.