In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00514-CR


____________________



PAUL ISAAC DOIRON, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 2


Orange County, Texas


Trial Cause No. E95017






 OPINION


 After a jury found Paul Isaac Doiron guilty of driving while intoxicated, the trial court
sentenced him to 180 days' confinement and a fine of $800. The court then suspended
Doiron's sentence and placed him on community supervision. 

 In a single appellate issue, Doiron contends that the trial court erred in denying his
motion to suppress. Doiron argues that the stop of his vehicle was illegal because the
arresting officer had no reasonable suspicion supporting the stop. Doiron further argues that
the officer's assertion that he was exercising his community caretaking function was neither
reasonable nor "totally divorced" from his investigation of criminal activity. 

 At the suppression hearing, the trial court reviewed the affidavit of the arresting
officer, Jason Laughlin, and heard argument of counsel before making its decision. Doiron's
counsel argued the stop was illegal because the officer's affidavit failed to state that Doiron
committed a traffic offense or was suspected of a crime. The State contended the stop was
legitimate because it was proper for Officer Laughlin to determine Doiron's condition under
the circumstances; he was traveling on the side of the road at 1:00 a.m. with his brake lights
blinking intermittently.

 In denying Doiron's motion, the trial court relied on Wright v. State, 7 S.W.3d 148,
151-52, (Tex. Crim. App. 1999), which recognizes a police officer's community caretaking
function as a reasonable exception to the Fourth Amendment's warrant requirement. 


Standard of Review


 Appellate courts review trial court decisions on motions to suppress evidence for
abuse of discretion. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). The
reviewing court views the evidence in the light most favorable to the trial court's ruling.
Gutierrez v. State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007). "In a suppression hearing,
the trial court is the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony." State v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App.
1999). If the trial court makes no explicit findings of fact, we imply fact findings to support
the court's ruling when the evidence supports the implied findings. Gutierrez, 221 S.W.3d
at 687. As Gutierrez explained:

 Generally, implied findings would be limited to the record produced at the
suppression hearing. However, when the parties subsequently re-litigate the
suppression issue at the trial on the merits, we consider all evidence, from both
the pre-trial hearing and the trial, in our review of the trial court's
determination.


Id. (citing Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996) ("Where the State
raises the issue at trial either without objection or with subsequent participation in the inquiry
by the defense, the defendant has made an election to re-open the evidence, and consideration
of the relevant trial testimony is appropriate in our review.")). (1)

Community Caretaking


Evidence


 At the suppression hearing, the only evidence presented to the trial court was Officer
Laughlin's affidavit. The affidavit stated:

 On August 26, 2006, at approximately 1:00 a.m. I was patrolling in the 1800
block of Western Avenue in West Orange, Texas, when I observed a black,
Honda Civic automobile traveling slowly on the side of Western Avenue with
the brake lights blinking intermittently. I saw that there was a lone, white male
occupying the vehicle. I activated my emergency lights and stopped the
vehicle. When I made contact with the driver/suspect, I noticed a strong odor
of an alcoholic beverage emitting from his breath and vehicle. I had the
suspect exit the vehicle and I noticed that he was unsteady on his feet, that his
eyes were bloodshot red and glassy, his clothes were untidy, and he had a
stamp on his hand which appeared to have come from a bar. I also noticed that
the suspect had vomited on the ground outside of the vehicle he had been
operating. I asked the suspect to perform several sobriety tests. He exhibited
signs of intoxication on all tests administered. I arrested the suspect for
Driving While Intoxicated and transported him to the Orange County Jail. 
While at the jail, I requested a sample of the suspect's breath or blood and he
refused to provide such sample.


 In our review, we also consider Officer Laughlin's trial testimony that was elicited by
defense counsel about the stop and the officer's testimony related to his community
caretaking function. See Gutierrez, 221 S.W.3d at 687; Rachal, 917 S.W.2d at 809. 
Doiron's counsel cross-examined Officer Laughlin:

 Counsel: Okay. What - what was Mr. Doiron doing that
caused your attention to be directed to his way?


 Witness: The way he was driving at 1:00 o'clock in the
morning. The way he pulled off to the side of the
road and had the door open in his car with his
head leaning out of it, directing me his way.


 Counsel: You say at 1:00 o'clock in [the] morning. Is there
any law against driving at 1:00 o'clock in the
morning?


 Witness: No, sir, there's not.


 Counsel: And please tell the jury what - what traffic
violation or traffic ticket you gave him. Did you
give him one?


 Witness: I arrested the subject for driving while intoxicated
after interviewing him.


 Counsel: And did you cite him for any traffic violations?

 

 Witness: No, sir, I did not. I did not.


 Counsel: Did he violate any traffic laws?


 Witness: He did not violate any traffic laws, no, sir.


 Counsel: You didn't stop him for speeding?


 Witness: No, sir. I stopped him for community caretaking,
sir.


 Counsel: You stopped him for community caretaking?


 Witness: Correct.


 Counsel: Explain to the [] jury what community caretaking
is.


 Witness: We have an obligation to - if I see somebody that
may need help or something and feel - I feel that
it's my obligation to stop and help the citizen or
anybody in the community. And being that he
was pulled over with his door open and his brakes
were displayed, I felt that it was my duty to make
sure that he was okay to operate a motor vehicle
on a public roadway.


 Still under cross-examination, Officer Laughlin testified that he was concerned not
only for Doiron's safety but also for the safety of others. Officer Laughlin stated that as he
approached the vehicle he detected a "strong odor" of alcohol. Defense counsel further
cross-examined Officer Laughlin: 


 Counsel: And so, you are telling the jury that your purpose
for confronting a citizen and asking them how
much they've had to drink was your caretaking
function?


 Witness: I'm advising, sir, that he was stopped initially in
the middle of the roadway. He had his door open
puking, which is not normal activity at 1:00
o'clock in the morning on Western Avenue. He
proceeded off of the roadway with the door open
as he was puking. Yes, sir, that is why I made
contact with him; and he was operating a motor
vehicle as a lone occupant.


Applicable Case Law


 In 1999, the Texas Court of Criminal Appeals recognized the "community caretaking"
function and its narrow application. Wright, 7 S.W.3d at 151-52 (citing Cady v.
Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973)). As Wright explained,
a police officer's job involves more than enforcing the law, conducting investigations, or
gathering evidence for criminal proceedings. Id. at 151. An officer also investigates
accidents that involve no criminal liability claim, directs traffic, and performs other duties
that are best described as "'community caretaking functions.'" Id. (quoting Cady, 93 S.Ct.
at 2528). Part of an officer's duty to "serve and protect" involves stopping and assisting "an
individual whom a reasonable person-given the totality of the circumstances-would believe
is in need of help." Id. 

 To invoke the community caretaking exception, an officer's primary motive must be
concern for the individual's well-being. Corbin v. State, 85 S.W.3d 272, 277 (Tex. Crim.
App. 2002). Here, Officer Laughlin testified that he had an obligation to help someone
whom he saw and thought might need help, and that as an officer he felt it was his obligation,
under the circumstances, to make sure that Doiron was okay. We conclude that the trial
court, as the exclusive judge of credibility and as finder of fact could have found that Officer
Laughlin's primary motivation in stopping Doiron was based on his concern for caring for
the community.

 Next, we must determine whether Officer Laughlin's belief that Doiron needed
assistance was reasonable. See Corbin, 85 S.W.3d at 277. When determining whether an
officer acted reasonably in stopping an individual to determine if he needs assistance, 
appellate courts consider the following non-exclusive factors: (1) the nature and level of the
distress exhibited by the individual; (2) the location of the individual; (3) whether or not the
individual was alone and/or had access to assistance independent of that offered by the
officer; and (4) to what extent the individual-if not assisted-presented a danger to himself
or others. Corbin, 85 S.W.3d at 277; Wright, 7 S.W.3d at 151-52. "Because the purpose of
the community caretaking exception is to allow an officer to 'seize' and assist an individual
whom he reasonably believes is in need of help, the first factor is entitled to the greatest
weight." Corbin, 85 S.W.3d at 277.

 All four factors-distress, location, other assistance, and danger to himself-support the
reasonableness of Officer Laughlin's actions. Doiron's distress was readily apparent; the
driver's door of the vehicle was open and Doiron was vomiting while leaning out the door. 
As to location, the vehicle was stopped in the road and then pulled slowly to the roadside,
with the motor running and the brake lights flashing intermittently. Doiron was alone, so
there was no one there except the officer to aid him or to transport him to a location where
he could receive care if necessary. Without anyone else available to render assistance, it
would be reasonable for Officer Laughlin to stop and determine whether Doiron was in
danger. The community caretaking cases are fact specific, and under the circumstances of
this case, we conclude that Officer Laughlin acted reasonably. See Lebron v. State, 35
S.W.3d 774, 777 (Tex. App.- Texarkana 2001, pet. ref'd) (applying exception when the
officer found motorist slowly driving away from reported accident on two flat tires before
coming to a full stop on the roadway). We overrule Doiron's sole appellate issue.

 Because we hold that Doiron's motion to suppress was properly denied, we affirm the
trial court's judgment.

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on March 6, 2009

Opinion Delivered March 18, 2009

Publish

 

Before Gaultney, Kreger, and Horton, JJ.
1. In Webb v. State, the Texas Court of Criminal Appeals observed: "To hold that
appellate review is limited to facts adduced at the pretrial hearing under circumstances such
as these, however, could place the appellate court in the untenable position of having to
reverse a conviction in the face of a record which supports, albeit belatedly, the trial court's
ruling." 760 S.W.2d 263, 272 n.13 (Tex. Crim. App. 1988).