**Opinion filed February 5, 2015**



In The

# Eldenth Court of Appeals

_____

## No. 11-12-00268-CR
_____

## SCOTTY MURL CASSELMAN, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. 8983**

### M E M O R A N D U M   O P I N I O N

Scotty Murl Casselman entered an open plea of guilty to the offense of possession of less than one gram of methamphetamine in a drug-free zone. Appellant pleaded true to four enhancement paragraphs. The trial court convicted Appellant of the offense, found the enhancement paragraphs to be true, and assessed Appellant's punishment at confinement for forty years in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Appellant contends that his guilty plea resulted from ineffective assistance of his trial counsel and that, therefore, his plea was involuntary. We affirm.

*Procedural History*

The trial court entered Appellant's judgment of conviction on February 7, 2006. Appellant did not immediately appeal his conviction. Appellant filed a pro se application for writ of habeas corpus based on allegations that his trial counsel rendered ineffective assistance of counsel. On August 22, 2012, the Court of Criminal Appeals issued an opinion in which it concluded that Appellant had been prejudiced by his trial counsel's incorrect advice that Appellant would waive his right to appeal the conviction if he entered an open plea of guilty. The Court of Criminal Appeals granted Appellant permission to file an out-of-time appeal.

*Appellant's Motion for New Trial*

Appellant filed a motion for new trial, a first amended motion for new trial, and a second amended motion for new trial in the trial court after the Court of Criminal Appeals granted him permission to file an out-of-time appeal. Appellant asserted in the motion that his trial counsel rendered ineffective assistance of counsel (1) by failing to properly investigate the law and facts regarding the police officer's stop of Appellant's vehicle that ultimately led to Appellant's arrest for possession of methamphetamine and (2) by failing to request a hearing on a motion to suppress the evidence. Appellant's ineffective-assistance claims rested on the premise that the police found the methamphetamine as the result of an illegal stop of his vehicle. Appellant contended that, although the stop was illegal, his counsel erroneously concluded and advised him that the stop was legal. Appellant attributed counsel's erroneous advice on counsel's failure to conduct an adequate investigation. Appellant asserted that his guilty plea was based on his counsel's erroneous advice that the stop was legal. The trial court denied Appellant's motion for new trial without a hearing.

*Background Facts*

At Appellant's sentencing hearing, the State presented evidence related to the stop of Appellant's vehicle. Snyder Police Officer Travis Alan Griffith testified that, on April 3, 2005, at about 11:30 p.m., he was working as a patrol officer. At that time, Officer Griffith was dispatched in response to a caller's report that an unconscious person was in a white pickup that was stopped at a red light at the intersection of 30th Street and College Avenue. As Officer Griffith traveled to the scene, he was advised by the dispatcher that the calling party had reported that the person in the pickup had regained consciousness and was traveling southbound on College Avenue. Officer Griffith located the pickup as it traveled southbound in the 3500 block of College Avenue. Officer Griffith activated his in-car camera and followed the pickup.

The driver of the pickup, whom Officer Griffith later determined was Appellant, stopped at a red light at the intersection of 37th Street and College Avenue and then continued to travel southbound on College Avenue. Appellant drove the pickup well under the speed limit. Appellant made a very wide turn into the Wal-Mart parking lot in the 4500 block of College Avenue. Based on the caller's report that the person in the pickup had been unconscious and the lateness of the hour, Officer Griffith decided to initiate a welfare-concern stop of the pickup out of concern for the driver. Officer Griffith activated his emergency lights and made the stop.

Officer Griffith approached the pickup and talked with Appellant. Officer Griffith asked Appellant what had happened at the red light. In response, Appellant said that he had fallen asleep. Officer Griffith testified that he detected an odor of alcohol on Appellant's person. Officer Griffith questioned Appellant about the alcohol. In response, Appellant claimed that the odor of alcohol was

3

coming from rubbing alcohol that he had put on his arm to treat an injury. Officer Griffith did not believe Appellant's story because Appellant's arm did not appear to be wet and because the odor of rubbing alcohol is considerably different from the odor of alcoholic beverages that are consumed.

Officer Griffith initiated a driving-while-intoxicated investigation. Officer Griffith administered standardized field sobriety tests to Appellant. During the field sobriety tests, Appellant exhibited a number of clues of intoxication. Based on Officer Griffith's observations of Appellant and Appellant's performance on the field sobriety tests, Officer Griffith concluded that Appellant was intoxicated. Officer Griffith placed Appellant under arrest for driving while intoxicated.

Officer Griffith searched Appellant and found two pieces of foil that contained methamphetamine in one of Appellant's pockets. Officers searched the pickup and found another piece of foil that contained methamphetamine. Officer Griffith also placed Appellant under arrest for possession of a controlled substance.

Following his arrest, Appellant was charged with the offense of possession of a controlled substance in a drug-free zone. The indictment alleged that, on or about April 3, 2005, Appellant intentionally and knowingly possessed less than one gram of methamphetamine within 1,000 feet of Stanfield Elementary in Snyder, Texas. As stated above, Appellant entered an open plea of guilty to the offense, and ultimately, the trial court sentenced Appellant to confinement for forty years.

After Appellant obtained permission to file an out-of-time appeal in this cause, he filed a motion in the trial court seeking to incorporate copies of numerous documents that had been filed in his habeas proceeding (Cause No. 8983-A) into the record in this cause. The trial court granted Appellant's motion. The incorporated habeas documents included incident reports prepared by

4

Officer Griffith in connection with the stop of Appellant's pickup and affidavits of Appellant and his trial counsel that related to trial counsel's representation of Appellant in the trial court.

The incorporated documents showed that, in his habeas proceeding, Appellant sought a new trial in this cause. Appellant stated in his habeas filings that his application was "centered on ineffective assistance of counsel and the voluntariness of applicant's entered plea." He also stated that "[t]he writ record . . . reasonably establishes that defense counsel's advice that the stop was justified and that an open plea of guilty should be entered, was not reasonably competent advice, where the stop was not justified and a suppression defense should have been pursued before entering a plea of guilty to the charge." The trial court entered an order recommending that habeas relief be denied.

In this cause, Appellant raised the same ineffective-assistance-of-counsel claims in his motion for new trial that he had earlier raised in the habeas proceeding. Appellant requested a hearing on his motion. However, the trial court denied the motion without a hearing.

### *Issues on Appeal*

Appellant presents four issues for review. In his first issue, he contends that the trial court abused its discretion by not granting him a hearing on his motion for new trial. In his second issue, he contends that the trial court erred by not granting his motion for new trial. In his third and fourth issues, Appellant contends that his trial counsel rendered ineffective assistance by failing to thoroughly investigate the facts of the stop that led to Appellant's arrest and by failing to seek suppression of the methamphetamine and that his counsel's ineffective assistance caused him to involuntarily enter a plea of guilty to the offense.

*Applicable Law and Standard of Review*

To determine whether Appellant's trial counsel rendered ineffective assistance, we must first determine whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, then determine whether there is a reasonable probability that the result of the proceeding would have been different but for his counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. at 694; *Hernandez*, 726 S.W.2d at 55. We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Appellant contends that he entered his plea of guilty based on erroneous advice from counsel that the stop was legal. A guilty plea must be knowingly and voluntarily entered to be constitutionally valid. *Bousley v. United States*, 523 U.S. 614, 618 (1998); *Grabowski v. State*, 27 S.W.3d 594, 598 (Tex. App.—Eastland 2000, no pet.). A guilty plea that is made as the result of ineffective assistance of counsel is not knowingly or voluntarily made and is, therefore, invalid. *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex. Crim. App. 2012); *Courtney v. State*, 39 S.W.3d 732, 734 (Tex. App.—Beaumont 2001, no pet.). If an attorney conveys erroneous advice to his client and the client enters a guilty plea based on that

6

advice, the plea is involuntary. *Moussazadeh*, 361 S.W.3d at 689; *Rivera v. State*, 952 S.W.2d 34, 36 (Tex. App.—San Antonio 1997, no pet.). When a defendant pleads guilty on the advice of counsel and later challenges the voluntariness of his plea based on allegedly ineffective assistance of counsel, the voluntariness of the plea depends on (1) whether counsel's advice is within the range of competence demanded of attorneys in criminal cases and, if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010); *De La Garza v. State*, 296 S.W.3d 200, 203 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

A trial counsel's failure to file a motion to suppress is not per se ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986); *Hollis v. State*, 219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no pet.). Counsel is not required to engage in the filing of futile motions. *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991); *Hollis*, 219 S.W.3d at 456. To satisfy the *Strickland* test and prevail on an ineffective-assistance claim premised on counsel's failure to file a motion to suppress, an appellant must show that a motion to suppress would have been granted. *Jackson v. State*, 973 S.W.2d 954, 956–57 (Tex. Crim. App. 1998).

### *Denial of Hearing*

We review a trial court's denial of a hearing on a motion for new trial for an abuse of discretion; we reverse only if the decision to deny a hearing was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009). The purposes of a hearing on a motion for new trial are (1) to determine whether the case should be retried and (2) to prepare a record for presenting issues on appeal if the motion is denied. *Id.* at 338. A hearing on a motion for new trial is not an absolute right. *Id.*

7

A hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record. *Id.* However, a trial court abuses its discretion in failing to hold a hearing if the motion and accompanying affidavits (1) raise matters that are not determinable from the record and (2) establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009).

Appellant's ineffective-assistance claims were based on allegations that the stop of his pickup was illegal but that his counsel erroneously advised him that the stop was legal. Appellant asserted as follows in his motion for new trial:

> The Defendant should be granted a new trial in this cause because the Defendant's trial attorney provided ineffective assistance of counsel by failing to properly investigate the law and the facts regarding the traffic stop that led to Defendant's arrest, by conveying erroneous information to the Defendant regarding the validity of the traffic stop, [and] failing to properly investigate the 911 call that led to the traffic stop. It was due to this ineffective assistance of counsel that caused Defendant's plea of guilty to be involuntary.

In his motion, Appellant referred to documents that had been filed in his habeas proceeding (Cause No. 8983-A). Appellant requested the trial court to consider the documents as evidence in support of his motion. Appellant stated that, "[i]n particular, the documents contain affidavits of both the Defendant and Defendant's trial counsel which support the Defendant's argument that the traffic stop of Defendant was unlawful and that advice of trial counsel was erroneous therefore making the plea of Defendant involuntary." Officer Griffith's incident reports were included in the habeas documents. As stated above, the trial court granted Appellant's motion to incorporate the habeas documents into the record in this cause, and those documents are included in the appellate record.

Appellant offered his own affidavit in support of his motion for new trial. In his affidavit, Appellant stated that he did not discover that Officer Griffith's

8

incident reports existed until about nine months after his conviction in this cause. Appellant asserted in his affidavit that one of the incident reports contained material evidence that the person who made the 911 calls used a false name because he did not want to get involved in the case. As claimed by Appellant, Officer Griffith stated in his supplemental incident report that "[t]he calling party to this offense was identified as Bradley Scott George" and that "George stated when he called the police he stated his name was Jim because he did not want to get involved." Officer Griffith also stated that "George apologized and stated he would help in any way possible." Appellant asserted in his motion for new trial that, because the 911 calls were not "face-to-face encounter[s]," the information that George provided to police was "insufficient to justify the stop." Therefore, Appellant asserted that "the stop [was] not reasonable or lawful under Texas Law and the constitutions of Texas and the United States."

We have previously summarized Officer Griffith's testimony about the stop of Appellant's pickup. The record contains numerous documents from Appellant's habeas proceeding relating to the stop and to trial counsel's representation of Appellant, including Officer Griffith's police reports, a DVD of the stop, and affidavits of Appellant and his trial counsel. The facts and circumstances related to Appellant's ineffective-assistance claims were fully developed and determinable from the written record presented to the trial court. Accordingly, a hearing on Appellant's motion for new trial was not required. *See Smith*, 286 S.W.3d at 338. We conclude that the trial court did not abuse its discretion by failing to grant Appellant a hearing on his motion for new trial. Appellant's first issue is overruled.

*Analysis of Appellant's Ineffective-Assistance Claims*

Appellant contends that George's use of a false name constituted material evidence. Because George used a false name, Appellant argues that the

9

information George provided to the police was unreliable and insufficient to establish reasonable suspicion or probable cause to stop Appellant's pickup and that, therefore, the stop was unlawful. In his brief, Appellant asserts that, if his trial counsel had properly investigated the facts surrounding Appellant's arrest, counsel would have discovered that George used a false name. Appellant further asserts that, upon discovering the information, the proper procedure for counsel would have been to request a hearing on a motion to suppress that he had previously filed.

Appellant's counsel filed an affidavit and a supplemental affidavit in Appellant's habeas proceeding. In the affidavits, counsel described in detail the investigation he performed in his defense of Appellant. Counsel stated that he had numerous conferences with Appellant, the district attorney, and the assistant district attorney about the case; that he investigated the facts of the case, including the facts surrounding the stop of Appellant's vehicle; that he viewed the video of the stop; that he reviewed discovery materials, including Officer Griffith's account of the events leading up to the stop; and that he researched relevant case law regarding stops, detentions, and arrests following 911 calls by citizens. Appellant's counsel did not obtain copies of Officer Griffith's incident report and supplemental incident report. Counsel stated in his initial affidavit that "[he] was not given a copy of the police report, as such is unfortunately not required by the Texas Rules of Criminal Procedure, and the report is not given to defense attorneys by the Scurry County D.A.'s office."

Counsel stated in his affidavit that he concluded the stop was justified as a "community caretaking" stop. He explained to Appellant that, in some circumstances, police are allowed to stop a vehicle to check on the welfare of the driver and that those circumstances appeared to be present in this case. Counsel also concluded and explained to Appellant that Appellant's DWI arrest resulted

from a lawful stop of Appellant's vehicle and that the subsequent search of Appellant's vehicle resulted from the DWI arrest and from Appellant's consent as demonstrated in the video.

Appellant's counsel also stated in his affidavit that he recommended for Appellant to plead guilty to the offense and to go to the trial court for punishment. Counsel stated that Appellant agreed with his recommendations. Counsel had filed a motion to suppress before Appellant decided to plead guilty to the offense. Counsel stated in his affidavit that, after the decision was made to enter a guilty plea, he decided not to pursue the motion to suppress, "both as a matter of trial strategy, and due to the facts developed during discovery as to the nature of the stop leading to the arrest of [Appellant]." Counsel stated in his supplemental affidavit that he informed Appellant that he thought "a Motion to Suppress would be deemed frivolous by the trial court" and that "to demand a hearing on the Motion prior to entering an open plea of guilty would have a negative effect on the court's sentencing of [Appellant]: that is, it was part of trial strategy to present [Appellant] as a life-long drug addict who deserved treatment and drug rehabilitation rather than a long prison sentence."

Appellant contends that his counsel was ineffective for failing to discover the information in Officer Griffith's supplemental incident report that George used a false name. Police reports and offense reports generally are not discoverable because they are the work product of the police and are exempt from pretrial discovery. *Ex parte Miles*, 359 S.W.3d 647, 670 (Tex. Crim. App. 2012); *Brem v. State*, 571 S.W.2d 314, 322 (Tex. Crim. App. [Panel Op.] 1978). However, the privilege derived from the work-product doctrine is not absolute, and the duty to reveal material exculpatory evidence as dictated by *Brady v. Maryland*[1] overrides the work-product privilege. *Ex parte Miles*, 359 S.W.3d at 670. Thus, the State

[1]*Brady v. Maryland*, 373 U.S. 83 (1963).

11

has a duty to disclose police reports that contain material exculpatory information. *Id.*

If Officer Griffith's incident reports did not contain *Brady* material, they were exempt from pretrial discovery, and as such, Appellant's trial counsel cannot be found ineffective for failing to discover them. *Abbott v. State*, 726 S.W.2d 644, 650 (Tex. App.—Amarillo 1987, pet. ref'd). On the other hand, if the reports contained *Brady* material, the State had a duty to disclose them to Appellant's counsel. *Ex parte Miles*, 359 S.W.3d at 670. Appellant's counsel cannot be faulted for being ineffective if the State had a duty to disclose the reports to Appellant but failed to disclose them. Appellant has not shown that his counsel provided ineffective assistance in connection with his investigation of the facts surrounding the stop of Appellant's pickup.

Appellant asserted in his motion for new trial that the State violated *Brady* by failing to disclose Officer Griffith's reports. However, Appellant has not raised his *Brady* claim on appeal. We note that, to establish a *Brady* violation, a defendant must show (1) that the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) that the evidence is favorable to him; and (3) that the evidence is material, that is, there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011); *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Higginbotham v. State*, 416 S.W.3d 921, 924 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Appellant contends that George's use of a false name constituted material evidence. We disagree. Officer Griffith's observation of the white pickup corroborated George's report that a white pickup was traveling southbound on

College Avenue and showed that George had provided accurate and credible information to the police. Officer Griffith did not stop Appellant's pickup solely based on the information that George reported to police. Instead, Officer Griffith's decision to make the stop was also based on his personal observation of the pickup for several blocks and the lateness of the hour. Under these circumstances, we conclude that evidence that George used a false name when he called the police was not material under *Brady*.

Even without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of his community-caretaking function. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002); *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999); *see Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). "As part of an officer's duty to 'serve and protect,' an officer 'may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe *is in need of help*.'" *Corbin*, 85 S.W.3d at 276 (quoting *Wright*, 7 S.W.3d at 151). This exception to the warrant requirement is narrow, and a police officer may not properly invoke the community-caretaking function if he is primarily motivated by a non-community-caretaking purpose. *Corbin*, 85 S.W.3d at 277; *Wright*, 7 S.W.3d at 152.

Whether an officer properly invoked his community-caretaking function requires a two-step inquiry: (1) whether the officer was primarily motivated by a community-caretaking purpose and (2) whether the officer's belief that the individual needed help was reasonable. *Gonzales v. State*, 369 S.W.3d 851, 854–55 (Tex. Crim. App. 2012). To determine the reasonableness of the police officer's belief that an individual needs assistance, courts are to consider the following nonexclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual

13

was alone or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id.* at 855; *Corbin*, 85 S.W.3d at 277.

Late at night, Officer Griffith received information from his dispatcher that an unconscious person was in a white pickup that was stopped at a red light at 30th Street and College Avenue. As Officer Griffith drove to the scene, the dispatcher informed him that the person in the pickup had regained consciousness and was traveling southbound on College Avenue. Officer Griffith located the pickup as it traveled on College Avenue and then followed the pickup for several blocks. The driver of the pickup drove well under the speed limit and then made a very wide turn into the Wal-Mart parking lot. The driver was alone in his pickup. If not assisted, he presented a danger to himself or others, especially if he were to again lose consciousness or fall asleep while driving. Officer Griffith testified that he decided to make a welfare-concern stop of the pickup out of concern for the driver. Nothing in the record suggests that Officer Griffith's motive to make the stop was something other than to check on the welfare of the driver. Officer Griffith did not begin his DWI investigation until after he smelled the odor of alcohol emanating from Appellant.

The evidence supports conclusions (1) that Officer Griffith was primarily motivated by a community-caretaking purpose when he made the stop and (2) that Officer Griffith's belief that Appellant needed help was reasonable. Considering the evidence, we conclude that the stop was justified and lawful under the community-caretaking exception to the warrant requirement. Accordingly, Appellant cannot meet his burden to show that a motion to suppress had merit and would have been granted, and his trial counsel cannot be found deficient for failing to request a hearing on the motion to suppress. *See Jackson*, 973 S.W.2d at 956– 57.

Appellant has not shown that his trial counsel's advice regarding the legality of the stop was erroneous. Therefore, Appellant cannot prevail on his claim that he pleaded guilty as a result of receiving erroneous advice from his counsel. We conclude that Appellant has not satisfied the first prong of *Strickland*. Additionally, even if we were to find that trial counsel's representation fell below an objective standard of reasonableness, Appellant has not established a reasonable probability that the result of the proceeding would have been different but for his counsel's alleged errors. Therefore, the trial court did not abuse its discretion by denying Appellant's motion for new trial. Appellant's second, third, and fourth issues are overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


February 5, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.