**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

12/10/15

**DORIAN E. RAMIREZ, CLERK**
BY  DTELLO

ACCEPTED
13-15-00086-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/10/2015 11:06:57 PM
Dorian E. Ramirez
CLERK

**No. 13-15-00086-CR**

**In The
Court of Appeals
For The
Thirteenth District of Texas**

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS

12/10/2015 11:06:57 PM

DORIAN E. RAMIREZ
Clerk

THEODORE ENDTER,

*Appellant,*

v.

THE STATE OF TEXAS,

*Appellee.*

On Appeal From the 117th Judicial District Court
Cause No. 14-CR-0637-B
Nueces County, Texas

**BRIEF FOR APPELLANT**

The Pastrano Law Firm, P.C.
E. Chevo Pastrano
State Bar No.: 24037240
202 Travis Street, Suite 307
Houston, Texas 77002
Telephone:     713.222.1100
Facsimile:     832.218.7114
chevo@pastranolaw.com

Counsel for Appellant

**ORAL ARGUMENT REQUESTED.**

**Identity of Parties and Counsel**

The undersigned counsel of record certifies that the following is a complete list of all parties to the trial court's judgment and a complete list of the names and addresses of all trial and appellate counsel:

Mr. Brent de la Paz
214 Dwyer Avenue, Suite 315
San Antonio, Texas 78204
Telephone:   210.229.1311
Facsimile:   210.227.0685
*Trial Counsel for Appellant, Theodore Endter*

Mr. E. Chevo Pastrano
Mrs. Ginna G. Pastrano
The Pastrano Law Firm, P.C.
202 Travis Street, Suite 307
Houston, Texas 77002
Telephone:   713.222.1100
Facsimile:   832.218.7114
*Appellate Counsel for Appellant, Theodore Endter*

Mr. Mark Skurka
Nueces County District Attorney
901 Leopard Street, Room 206
Corpus Christi, Texas 78401
Telephone:   361.888.0410
Facsimile:   361.888.0700
*Trial and Appellate Counsel for Appellee, The State of Texas.*

# Table of Contents

**Page(s)**

Index of Authorities.................................................................................iv

Statement of the Case .............................................................................1

Issue Presented ......................................................................................1

Statement of Facts ................................................................................1

Summary of Argument.............................................................................3

Point of Error Number One ......................................................................4

**The trial judge erred in denying Appellant's motion to suppress evidence obtained pursuant to an illegal vehicle stop.**

Prayer...................................................................................................14

Certificate of Service.............................................................................15

Certificate of Compliance.......................................................................15

# Index of Authorities

## United States Constitution

U.S. CONST. amend. IV ...............................................................................................4

U.S. CONST. amend. XIV ............................................................................................4

## United States Supreme Court Cases

*Mapp v. Ohio,*
    367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).............................................4

*Terry v. Ohio,*
    392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)...................................... 5-6, 11

## Texas Cases

*Cornejo v. State,*
    917 S.W.2d 480 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd)................ 8-9

*State v. Griffey,*
    241 S.W.3d 700 (Tex.App.—Austin 2007, pet. ref'd) .............................. 3, 6-13

*Stewart v. State,*
    22 S.W.3d 646 (Tex.App.—Austin 2000, pet. ref'd) ..................... 7-8, 10, 11, 12

*Wright v. State,*
    18 S.W.3d 245 (Tex.App.—Austin 2000, pet. ref'd) ....................................4, 13

## Statement of the Case

Appellant was charged by indictment with the felony offense of driving while intoxicated. (CR 5-6). Appellant filed a "Motion to Suppress Evidence." (CR 14-20). After a hearing was held on the motion to suppress, the trial court denied the requested relief. (RR II 43) (stating "[I] am not above changing my mind, but right now, you can probably count on a denial on both.") (RR V 6) (Defense re-urging motion to suppress).

Subject to the trial court's ruling, a jury trial was held. (CR 72-80). Appellant was convicted by a jury and punishment was assessed at ten years confinement in the Texas Department of Criminal Justice probated for five years and a $2500 fine. (CR 94-95) (RR VII 12-13). The trial court certified appellant's right to appeal. (CR 62). Appellant timely filed Notice of Appeal. (CR 86). Brief for appellant was due on November 30, 2015. Appellant is simultaneously filing a motion for extension of time for the filing of Appellant's brief so that this brief may be accepted and filed as timely.

## Issues Presented

**The trial judge erred in denying Appellant's motion to suppress evidence obtained pursuant to an illegal vehicle stop.**

## Statement of Facts

On January 23, 2015, at the time of the suppression hearing, Officer Joshua Swaim ("Swaim") was employed by the City of Corpus Christi Police Department

1

as a patrolman for 'about ten years[.]'  (RR II 17).

On February 22, 2014, while patrolling his district within the City of Corpus Christi, Swaim received a dispatched call regarding a 'man down' at a Whataburger, although no one reported a man in need of medical assistance.  (RR II 8, 19).  The call said it was a man slumped over in the driver's seat of the vehicle.  (RR II 8).  The vehicle was described as a dark vehicle in the drive-thru of the Whataburger.  (RR II 8).  The caller is unknown or anonymous.  (RR II 16).

The Whataburger was located at 14301 SPID on North Padre Island, Corpus Christi, Nueces County, Texas.  (RR II 9).

Swaim responded to the Whataburger and located a dark SUV stopped in the drive thru between the point where orders are made and the pick up window.  (RR II 9).  The dark SUV was blocking the drive thru.  (RR II 9).   The only persons reported to be at the Whataburger upon Swaim's arrival were two employees on the inside.  (RR II 19).

The drive thru is in the back of the Whataburger so Swaim came in through the back.  (RR II 9).  After locating the dark SUV, Swaim parked his patrol vehicle in front of the dark SUV to "prevent them from going."  (RR II 18) (RR V 15, 36).

After parking his patrol vehicle in front of the dark SUV to prevent them from going anywhere, Swaim and Corpus Christi Officer Jonathan McGinley ("McGinley") exited their patrol vehicles and approached the driver's side of the

vehicle.   (RR II 9, 28).  The SUV was running.  (RR II 9).  Swaim and McGinley then looked through the window and could see a male slumped over in the driver's seat.  (RR II 9, 28).  The vehicle was in park.  (RR II 9).  Swaim concedes that the driver may simply be sleeping.  (RR 24).

Swaim and McGinley entered the SUV, turned the SUV off and took the keys from the SUV.  (RR II 10).  Swaim then developed a concern that the driver, later identified as the appellant, was in need of medical attention.  (RR II 10).

After awaking appellant, Swaim conducted a DWI investigation, which led to the arrest of appellant for the offense of driving while intoxicated.  (RR II 11-13).

## Summary of Argument

The caller in the instant case reported that an individual was passed out behind the wheel in the drive thru line, which does not constitute criminal behavior.  *State v. Griffey*, 241 S.W.3d 700, 705 (Tex.App.—Austin 2007, pet. ref'd)[1].

The trial judge erred in denying appellant's motion to suppress evidence obtained by an illegal search of the appellant's person and vehicle during an illegal vehicle stop.  Swaim lacked reasonable suspicion.  Swaim lacked probable cause.

---

[1] *Griffey* is directly on point with the instant cause.  It is the identical situation except for in *Griffey*, the detaining officer could see the driver upon his arrival to the Whataburger.  In the instant cause, the detaining officer could not see appellant until after appellant was detained and the detaining officer walked up to appellant's window.  Detention was accomplished by parking a patrol vehicle directly in front of the vehicle in the Whataburger drive thru.

3

Swaim's stop of appellant was an unreasonable application of the community caretaking function.[2]

## Point of Error

Point of Error Number One:

**The trial judge erred in denying Appellant's motion to suppress evidence obtained pursuant to an illegal vehicle stop.**

Since the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of *exclusion* as is used against the Federal Government. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961) (emphasis added). However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness. *Id.* at 658 (citations omitted).

> "There are those who say … that under our constitutional exclusionary doctrine the criminal is to go free because the constable has blundered. In some cases this will undoubtedly be the result. But, … there is another consideration—the imperative of judicial integrity. The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. *Id.* at 659 (citations omitted).

The Fourth Amendment provides that 'the right of the people to be secure in

---

[2] *Wright v. State*, 18 S.W.3d 245 (Tex.App.—Austin 2000, pet. ref'd).

their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. *Id.* at 9 (citations omitted).

It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person. *Id.* at 16.

> "Under our decision, courts still retain their traditional responsibility to guard against police conduct which is over-bearing or harassing, or which trenches upon personal security without the objective evidentiary justification which the Constitution requires. When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials. And, of course, our approval of legitimate and restrained investigative conduct undertaken on the basis of ample factual justification should in no way discourage the employment of other remedies than the exclusionary rule to curtail abuses for which that sanction may prove inappropriate." *Id.* at 15.

> "In justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: ***would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was***

*appropriate?* Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than *inarticulate hunches*, a result this Court has consistently refused to sanction. And simple good faith on the part of the arresting officer is not enough. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police." *Id.* at 22-23 (citations omitted) (emphasis added).

### *State v. Griffey*

A police officer may conduct a brief investigative detention if he has a reasonable suspicion to believe that an individual is involved in criminal activity. *State v. Griffey*, 241 S.W.3d 700, 703 (Tex.App.—Austin 2007, pet. ref'd) (citations omitted). The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion. *Id.* A reasonable suspicion must be based on more than a mere hunch or non-specific suspicion of criminal activity. *Id.* The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances at its inception and will only be justified if the officer can point to specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a specific person had engaged in or was or soon would be engaging in criminal activity. *Id.* at 703-04. We look only at those *facts known to the officer at the inception of the stop*—a stop or search unlawful at its inception may not be validated by what it turns up. *Id.* at 704.

Reasonable suspicion may be established based on information given to police officers by citizen informants, provided the facts are ***adequately corroborated*** by the officer. *Id.* The officer should evaluate the reliability of a citizen informant by examining "the very nature of the circumstances under which the incriminating information became known to him." *Id.* A tip by an unnamed informant of undisclosed reliability may justify the initiation of an investigation; standing alone, however, it rarely will establish the requisite level of reasonable suspicion necessary to justify an investigative detention. *Id.* "There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *Id.* Factors to be considered in determining how much weight the anonymous tip deserves include an officer's prior knowledge and experience and his corroboration of the details of the tip. *Id.*

The circumstances surrounding a citizen-informant tip—and the resulting reliability of the information—can vary from a completely anonymous phone call to a face-to-face informant who is willing to be held accountable for his tip and whose only contact with the police results from his witnessing a criminal act. *Id.* A completely anonymous tip, such as the one illustrated in *Stewart v. State*, 22 S.W.3d 646 (Tex.App.—Austin 2000, pet. ref'd), is the ***least reliable*** and must be corroborated by additional facts. In *Stewart*, an officer detained a subject for DWI

7

based solely on an anonymous tip from a caller who stated that the driver of the vehicle appeared to be highly intoxicated and "fell down a couple of times trying to get into the vehicle." *Id.* An officer arrived on the scene and followed the vehicle described by the unidentified caller, but did not observe any traffic violations or other activity to corroborate the tip. *Id.* Because the detention was based solely on the anonymous caller's tip, which was "uncorroborated in its assertion of possible illegality," this Court held that the detention was not sufficiently supported by a reasonable suspicion that the driver was intoxicated. *Id.*

In contrast, the ***most reliable*** form of citizen-informant tip is information given by a face-to-face informant who has no other contact with the police beyond witnessing a criminal act, such as the informants in *Cornejo v. State*, 917 S.W.2d 480 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). There, the citizen informants spoke with police in person, stating that two gang members had fired a weapon at them from an automobile and pointing out the vehicle to the officers. *Id.* The court held that when police receive information from a citizen "whose only contact with the police is a result of having witnessed a criminal act committed by another, the credibility and reliability of the information is inherent." *Id.* Because of the inherent reliability of the citizen informants, the information they provided to police was sufficient to establish reasonable suspicion to detain

8

the driver of the vehicle without additional corroboration.  *Id.*

## *The Instant Cause*

*Griffey* is *almost* a carbon copy of the instant matter.

In *Griffey*, the Third Court of Appeals stated the following:

> "[T]he citizen informant ***was not*** completely anonymous in that
> he identified himself as the Whataburger manager.  However, he was
> not a face-to-face informant, nor was he a witness to a crime because
> the information he provided to the police did not allege any criminal
> activity.  The manager simply reported that an individual was passed
> out behind the wheel in the drive-through lane, which does not
> constitute criminal behavior.  Significantly, the manager did not report
> that the driver was intoxicated or that she exhibited any signs of
> intoxication.  Furthermore, the manager did not report that the driver
> had been passed out or asleep long enough to obstruct the passageway
> or whether the drive-through was ever obstructed." *Griffey*, at 705.

In the instant case, the citizen informant ***was completely anonymous***.  When
asked if he knew specifically who called 911, Swaim testified "I don't know
specifically who called.  It came in through 911." (RR II 8).  Like in *Griffey*, the
caller was not a face-to-face informant, nor was he a witness to a crime because the
information he provided to the police did not allege any criminal activity—in the
instant case, the dispatch was a vague dispatch for a "man down" which "could
either be laying on the ground or they can be in a vehicle." (RR II 8).  This time it
was a man down in a vehicle.  (RR II 8).  Significantly, as in *Griffey*, in the instant
case, the caller did not report that the driver was intoxicated or that he/she
exhibited any signs of intoxication.   Furthermore, in the instant case, the

anonymous caller did not report that the driver had been passed out or asleep long enough to obstruct the passageway or whether the drive-through was ever obstructed.

The tip in the instant case is less reliable than the 'not completely anonymous' tip given in *Griffey*. In fact, the tip in the instant case is less reliable than the tip given in *Stewart*. In the instant case, not only was it a completely anonymous tip, it was a **completely vague and completely anonymous tip**. Swaim simply reports he was dispatched to a "man down" which could mean different things—in this case a man down in a vehicle. The anonymous tip in *Stewart* contained detailed facts. The instant tip is less reliable than the tip in *Stewart*, which the Court in *Griffey* characterized as the least reliable type of tip.

The Third Court of Appeals, in *Griffey*, continued:

> "The circumstances that Nelson observed when he arrived on the scene—that Griffey was awake in her vehicle at the drive-through window—not only failed to corroborate the tip, but actually contradicted the manager's report. Upon arriving at the scene, Nelson would have been justified in initiating a consensual encounter to determine if there was additional information to corroborate the manager's tip. But instead, Nelson initiated an investigative detention without obtaining any additional corroboration of the manager's tip."

Like in *Griffey*, upon arriving at the scene, Swaim would have been justified in initiating a consensual encounter to determine if there was additional information to corroborate the **anonymous** tip. But instead, Swaim initiated an investigative detention without obtaining any additional corroboration of the

10

***anonymous*** tip.

Swaim parked his patrol vehicle in front of the dark SUV to "prevent them from going." (RR II 18) (RR V 15, 36). Like in *Griffey*, this was a detention. The purpose was to prevent the SUV from going anywhere. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to [drive] away, he has 'seized' that person. *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968).

The only notable difference between the instant cause and *Griffey* is that upon arrival in the instant case, Swaim did not or could not corroborate the tip, while in *Griffey*, the circumstances contradicted the tip. However, the apparent contradiction in *Griffey* is not what is required to prevail in this matter. A police officer may conduct a brief investigative detention if he has a reasonable suspicion to believe that an individual is involved in criminal activity. *State v. Griffey*, 241 S.W.3d 700, 703 (Tex.App.—Austin 2007, pet. ref'd) (citations omitted). ***The burden is on the State to elicit testimony showing sufficient facts to create a reasonable suspicion.*** *Id.* A completely anonymous tip, such as the one illustrated in *Stewart v. State*, 22 S.W.3d 646 (Tex.App.—Austin 2000, pet. ref'd), is the ***least reliable*** and ***must be*** corroborated by additional facts. *Id.* at 704.

In *Griffey*, the tip was not corroborated and it was contradicted. In the instant case, the tip was not corroborated. The tip was of a "man down." Swaim

11

responded to the Whataburger and parked his patrol vehicle in front of the SUV located in the drive thru. The facts elicited by the State do not support any other determination. A detention occurred without any corroboration at all. As stated in *Griffey*, sleeping in a parked vehicle is not against the law. Neither is parking a car waiting for roadside assistance. Parking and entertaining a protracted telephone conversation is also not against the law.

Before parking his patrol car directly in front of the SUV, Swaim failed to corroborate the anonymous tip by additional facts as required by *Stewart*. Only after detaining the SUV by parking in front of it did Swaim approach the SUV and see a male slumped over. (RR II 10). At that point, after detaining the vehicle and witnessing the male slumped over did Swaim develop a concern that there was a medical emergency (RR II 10) (responding to the question "Were you concerned about the fact that he was - - appeared to be sleeping in the vehicle?").

As a side issue, it is important to note that the Court in *Griffey* is clear to state that the tip did not convey that the vehicle in *Griffey* was obstructing the passageway. *Id.* at 705. The instant record reflects the same. Moreover, on direct examination, the State elicited the following:

> Q: Were there other - - was it preventing other people from coming through the drive-thru?
>
> A: Yes, nobody could get around where it was parked at. (RR II 9).

The question posed was unclear. On cross examination, defense counsel clarified:

Q: And then the Whataburger you said there was people there?

A: The staff was inside, it was just before two, so they usually have a couple of people *inside* the Whataburger. (RR II 19).

The only conclusion supported by the facts is that, while (hypothetically) nobody could get around the SUV where it was parked, there were a couple of people at the Whataburger on the *inside* only. Like in *Griffey*, the SUV was not obstructing a passageway.

Swaim's stop of appellant was an unreasonable application of the community caretaking function.[3] The following factors are relevant to said determination:

1. the nature and level of the distress exhibited by the individual;

2. the location of the individual;

3. whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and

4. to what extent the individual—if not assisted—presented a danger to himself or others. *Wright v. State*, 7 S.W.3d 148, 152 (Tex.Crim.App. 1999).

These factors must be assessed before the detention—not after. None of these factors favor the State's position.

---

[3] *Wright v. State*, 18 S.W.3d 245 (Tex.App.—Austin 2000, pet. ref'd).

The evidence in the instant cause should have been suppressed. Accordingly, the trial court erred. This Court should reverse the trial court's denial of appellant's motion to suppress and remand this cause for further proceedings consistent with that reversal.

## Prayer

Appellant respectfully asks this Court to sustain his point of error and to reverse the judgment of the trial court.

Respectfully submitted,

The Pastrano Law Firm, P.C.
202 Travis Street, Suite 307
Houston, Texas 77002
Telephone:   713.222.1100
Facsimile:    832.218.7114

By:_____
E. CHEVO PASTRANO
State Bar No. 24037240
chevo@pastranolaw.com

Counsel for Appellant

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been served on all counsel by facsimile or hand-delivery, in accordance with Rule 9.5 of the Texas Rules on Appellate Procedure, on this 11th day of December, 2015.

Mr. Mark Skurka
Nueces County District Attorney
901 Leopard Street, Room 206
Corpus Christi, Texas 78401
Telephone:  361.888.0410
Facsimile:   361.888.0700

_____
E. CHEVO PASTRANO


## Certificate of Compliance

I hereby certify, pursuant to Rule 9.4 (i) (2) (B) and rule 9.4 (i) (3) of the Texas Rules of Appellate Procedure that the instant brief is computer-generated using Microsoft Word for Mac and said computer program has identified that there are 5000 words or less within the portions of this brief required to be counted by Rule 9.4 (i) (1) & (2) of the Texas Rules of Appellate Procedure.

The document was prepared in proportionally spaced typeface using Times New Roman 14 for text and Times New Roman 12 for footnotes.

_____
E. CHEVO PASTRANO