

# NUMBER 13-15-00086-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THEODORE ENDTER,                                              **Appellant,**

**v.**

THE STATE OF TEXAS,                                          **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes**
**Memorandum Opinion by Justice Perkes**

Appellant Theodore Endter appeals his conviction of driving while intoxicated—

third offense, a third-degree felony.  *See* Tex. Penal Code Ann. § 49.04 (West, Westlaw

through 2015 R.S.).  After a jury found appellant guilty, the trial court sentenced him to

ten years' imprisonment.  The trial court suspended the sentence and placed appellant

on community supervision for five years.   By one issue, appellant argues the trial court erred by denying his motion to suppress.   We affirm.

## I.   BACKGROUND

Corpus Christi Police Officers Jonathan McGinley and Joshua Swain responded to a 911 call reporting a "man down" at Whataburger on South Padre Island Drive in Corpus Christi.[1]   Officer McGinley found Appellant "slumped over" in the driver's side of a vehicle "parked in the lane of the drive-thru."   As he approached the running vehicle, Officer McGinley determined that the vehicle was in "park" and appellant was "passed out" and drooling with sand on his face.   Officer McGinley concluded that appellant was intoxicated.

Officer Swain, opened the driver's side door of appellant's vehicle.   As he did so, appellant slid out of the seat toward Officer Swain. After several attempts, the officer succeeded in waking up appellant.   Officer Swain noticed several signs of appellant's intoxication, including an odor of alcohol, appellant's bloodshot eyes, and slurred speech. Officer Swain also spotted an open bottle of tequila on the floorboard of the passenger side of the vehicle.   Officer Swain asked appellant if he was carrying any weapons. After responding that he was, Officer Swain located a Glock handgun in appellant's front waistband.[2]   Officer Swain asked appellant to complete the standard field sobriety tests, which appellant declined.

---

[1] An ambulance responded to the call along with the police officers.
[2] We have addressed the weapons case in a memorandum opinion under appellate cause number 13-15-00229-CR.

2

Appellant was arrested and, subject to a search warrant, underwent a blood alcohol draw. Appellant moved to suppress the evidence of the "stop" and the blood test, arguing the officers were not justified in "stopping" him. Appellant's argument focused on whether the officers were justified in exercising their community caretaking function and whether their response was reasonable. The trial court denied appellant's motion to suppress and, after he was found guilty of driving while intoxicated, this appeal ensued.

## II.  COMMUNITY CARETAKING

By his sole issue, appellant argues that the trial court erred in denying his motion to suppress. Specifically, appellant challenges the officer's "illegal search" of appellant and his vehicle based on a lack of probable cause or reasonable suspicion. Appellant also complains that the officer's "stop" of appellant was an unreasonable application of the community caretaking function.

### A.  Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo the application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

3

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Under the Fourth Amendment, a warrantless arrest is unreasonable per se unless it fits into one of a "few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993); *Torres*, 182 S.W.3d at 901.

**B.    Applicable Law**

A search or seizure is not "unreasonable" when it is done pursuant to a valid exercise of the community caretaking function. *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (*citing Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). As part of an officer's duty to "serve and protect," an officer "may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help." *Wright,* 7 S.W.3d at 151. The community caretaking function, however, is "totally divorced from the detection, investigation, or acquisition of evidence relating to the

4

violation of a criminal statute." *Cady*, 413 U.S. at 441. Once it is determined that an officer is primarily motivated by his community caretaking function, it must then be determined whether the officer's belief that the defendant needs help is reasonable. *Wright*, 7 S.W.3d at 151–52. We consider four nonexclusive factors when deciding whether a search or seizure is justified by the community caretaking exception: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and (4) to what extent the individual—if not assisted—presented a danger to himself or others.

## C.    Analysis

Appellant first argues the officers lacked reasonable suspicion to justify appellant's detention.[3] He further challenges the 911 call's sufficiency to corroborate alleged criminal activity. Appellant argues that this case is factually similar to *State v. Griffey*, 241 S.W.3d 700 (Tex. App.—Austin 2007, pet. ref'd).

In *Griffey*, officers responded to a 911 call from a Whataburger restaurant manager reporting an individual "passed out behind the wheel in the drive-through." *See id.* at 702. When officers arrived, the defendant was awake and her vehicle was sitting next to the drive-through window. *Id.* The officers blocked the defendant's car with their police vehicles and asked her to turn off the vehicle and step out. *Id.* After the defendant was arrested for DWI, the trial court granted her motion to suppress. *Id.* at 703. Our sister court affirmed, concluding that while the tip did not allege criminal

---

[3] For our analysis we will assume, without deciding, that appellant was "seized" when the officers parked their vehicles in front of appellant's vehicle.

activity, the circumstances the officers witnessed contradicted the report. *Id.* at 705. While the officers would have been justified in initiating a consensual encounter, they were not justified in conducting an investigative detention without additional corroboration of the manager's tip. *Id.*

*Griffey* is distinguishable since it did not invoke the community caretaking function, but rather was a DWI investigation from the outset. *Id.* at 702. Aside from that detail, another distinguishing aspect of *Griffey* is that the officers did not personally witness any behavior by the defendant that would indicate either criminal activity or medical distress. *Id.* The *Griffey* defendant was awake and sitting in her car at the drive-through window when the officers arrived. *Id.* Had the defendant been "passed out" when the officers arrived, the officer's observations would have corroborated the manager's tip.

Unlike *Griffey*, Officer Swain and Officer McGinley arrived at Whataburger and found exactly what was reported in the 911 call—a driver slumped over the steering wheel of a running vehicle. Officer Swain testified that "man down" calls are vague by nature, and based on the likelihood of a health issue, an ambulance is typically dispatched with police. Officer Swain denied that his interaction with appellant was a traffic stop, and denied that he was investigating criminal activity when he initially approached appellant's vehicle. The trial court, as the exclusive judge of credibility and finder of fact, could have reasonably found that Officer Swain was primarily motivated by the community caretaking function.

We must now consider whether the officers reasonably believed appellant needed help. *See Wright*, 7 S.W.3d at 151–52. Concerning the first factor, the nature and level

6

of distress exhibited by appellant appeared to be high. An unresponsive person slumped over a steering wheel of a car blocking a drive-through lane could reasonably mean that the person suffered a medical emergency in their vehicle, thus posing a danger to themselves and possibly those around them. Next, regarding location, appellant was in a vehicle idling in a drive-through lane. There was no other testimony describing the surrounding conditions such as traffic or the proximity to other people. *See Gonzales v. State*, 369 S.W.3d 851, 856 (Tex. Crim. App. 2012) (analyzing the second Wright factor based on defendant's proximity to houses, businesses, and traffic). Third, although the record does not expressly say so, a fact-finder could reasonably infer that appellant was alone in his vehicle. There is no indication that anyone else was nearby and able to help appellant. Finally, the extent of appellant's possible distress exhibited a higher degree of danger. An unconscious person could reasonably be experiencing serious injury or other medical distress. In the community caretaking distress spectrum, the most severe distress tends to involve solo drivers in some sort of trouble. *McDonald v. State*, 759 S.W.2d 784, 785 (Tex. App.—Fort Worth 1988, no writ.).

We conclude the officers could have formed a reasonable belief that appellant was in need of assistance. *See id.* (adopting community caretaking exception when driver sat in parked car on highway's shoulder, slumped over steering wheel); *see also Hulit v. State*, 982 S.W.2d 431, 482 (Tex. Crim. App. 1998) (en banc) (holding officers acted reasonably when they approached the vehicle in which the appellant was slumped unconscious on a public highway, awakened the appellant, and asked him to step out so

7

they could see if he was in need of assistance).   Therefore, the trial court did not err in denying appellant's motion to suppress.   *See Amador,* 221 S.W.3d at 673.

### III.   CONCLUSION

We affirm the trial court's judgment.


GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
8th day of September, 2016.