

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00430-CR

The **STATE** of Texas,
Appellant

v.

Martin **YOUNG**,
Appellee

From the County Court At Law No 2, Guadalupe County, Texas
Trial Court No. CCL-23-0923
Honorable Kirsten Legore, Judge Presiding

Opinion by: Lori Massey Brissette, Justice

Sitting: Irene Rios, Justice
    Lori Massey Brissette, Justice
    Velia J. Meza, Justice

Delivered and Filed: June 18, 2025

AFFIRMED

This case involves a police-citizen encounter that ended in an arrest for driving while intoxicated (DWI). Appellant, the State of Texas, challenges the trial court's order granting appellee Martin Young's motion to suppress. Because the State procedurally defaulted an argument relating to a theory of law applicable to the case, and because we will not reverse a trial court unless its ruling is wrong under any theory of law applicable to the case, we must affirm.

## BACKGROUND

On August 6, 2023 at approximately 8:00 p.m., an anonymous person called 911 in Schertz, Texas, stating they observed a Blue Honda Odyssey minivan stopped at an intersection with the driver appearing to be asleep. The driver then appeared to put his vehicle in reverse gear. He eventually ended up parking in a parking lot between a Denny's restaurant and a Shell gas station. Officer Andrew Cavazos of the Schertz Police Department responded to the 911 call. Officer Cavazos approached the minivan and found Young inside. After a brief conversation, Officer Cavazos asked Young to exit the vehicle. When Young exited the vehicle, Officer Cavazos smelled alcohol on his person and began asking whether he had been drinking that night. Officer Cavazos then performed a field sobriety test on Young, which he failed. Officer Cavazos then arrested Young for a DWI.

On April 9, 2024, Young moved to suppress all evidence obtained at the scene, arguing the State's initial encounter with Young was not a consensual police-citizen encounter or motivated by the community caretaking function and the detention was unlawful as it lacked reasonable suspicion. The trial court held a hearing on the motion on June 12, 2024, and granted the motion two days later. The State filed this appeal.

## MOTION TO SUPPRESS

In his motion to suppress, Young sought to suppress all evidence seized during his encounter with Officer Cavazos. Specifically, he argued, among other things, his seizure was "made without any reasonable suspicion that he was engaged in criminal activity" and the evidence secured by the State was not secured pursuant to a reasonable investigative detention and was secured without probable cause, and "without [his] consent." He further argued, in a pleading provided to the trial court during the hearing, that the initial encounter was not consensual, that the community caretaking function did not apply to his detention, and that his detention was unlawful.

During the suppression hearing, the parties questioned the officers at the scene. Officer Cavazos testified he was dispatched after an anonymous 911 call for a "welfare concern" for an individual in a blue Honda Odyssey minivan in Schertz at approximately 8 p.m. The individual, according to the 911 caller, appeared to be asleep at the wheel and, at one point placed the vehicle in reverse. The vehicle then pulled into a gas station. When he arrived at the location of the dispatch, he saw the minivan lawfully parked in a Denny's restaurant parking space. There were no cars parked nearby. The Denny's was next to a gas station and, on the other side of the curb where the Odyssey was parked was the car wash for the gas station. Both businesses were open. Officer Cavazos testified he did not activate his flashing lights or sirens when he located Young's vehicle. He further testified he "pull[ed] up behind" Young's vehicle for a good vantage point since he did not know what he was "walking into." This placed the minivan between the patrol unit and a curb. On the other side of the curb, only a few feet away, was a car wash for a gas station. Officer Cavazos testified that if Young had wanted to put his vehicle in reverse, Officer Cavazos's patrol unit was blocking his ability to pull out of that spot, and he would have had to back his patrol unit up to allow him to leave. Officer Cavazos testified, at that point in time, he was not investigating a crime he was "checking on [Young's] welfare" to make sure he was "okay" and that there was "nothing else going on."

As he approached the vehicle, Officer Cavazos had his right hand on his holstered firearm. In his left hand he wielded a flashlight. Officer Cavazos stood in between the open driver's side door and the driver seat where Young sat, no more than a few feet from Young's person, and blocking Young's exit from the vehicle. Officer Cavazos shined the flashlight in Young's eyes. The Odyssey's engine was not running, the keys were in the center console, and the driver's side door was open. He testified he approached the vehicle and asked Young, who was awake: "How is it going, sir? You all right? Were you asleep?" He testified Young did not appear to be in any

distress, responding he was "okay" to Officer Cavazos. Officer Cavazos also asked whether Young was diabetic, but he did not ask Young any other health questions or whether he had had enough sleep the previous night. Young responded "I was just chilling. I just didn't want to drive right now." Officer Cavazos testified that after Young responded, he did not ask him what he meant by that. He testified Young appeared disoriented.

Within thirty seconds of encountering Young, Officer Cavazos asked Young to do him a favor and "step out of the vehicle and come talk to [him]." Officer Cavazos testified he did so because he wanted to "continue talking to him in a safe area so it's outside of the vehicle. I don't know what's in the vehicle." Officer Cavazos testified that although Young complied and stepped out of the vehicle, he was not obligated to do so and could have declined. He further testified he never unholstered his firearm, commanded Young to exit the vehicle, or threatened force. He testified that before asking him to step out of the vehicle he did not learn anything to suggest Young was intoxicated or otherwise observe anything suggesting Young engaged in any traffic violation or committed a crime.

Officer Guerrero approached in his patrol unit around the time Young was exiting the minivan and commenced using his flashlight to search the plain view of the inside of the vehicle. Officer Cavazos testified Young had no issues exiting the vehicle. However, he admitted he "was trying to determine if there was anything going on besides just his health," and trying to make sure Young was not "having a medical episode and he's just not aware of it." After Young exited the vehicle and began following his commands, Officer Cavazos removed his right hand from his firearm. Officer Cavazos noticed Young had grass on the back of his shirt and his clothes were disheveled. At this point in time, Officer Cavazos began smelling alcohol and started focusing on a DWI investigation. Officer Guerrero testified Young seemed confused and was "sweating profusely" during the hot summer evening. He also smelled alcohol on Young's breath.

After Young exited the vehicle, Officer Cavazos asked Young for his driver's license. Young commenced a search of his person and then his vehicle for his license. When he approached the rear door of the minivan to open it to continue his search, Officer Cavazos stopped him, stating "Bud, bud, hang on right here. We'll do it a different way." At this point Young asked: "Am I alright?" Officer Cavazos proceeded to explain that he was there because of the 911 call. Officer Cavazos then asked if he had been drinking, to which Young responded "earlier." Young eventually said, "I am not sure what this is." Officer Cavazos told him he was trying to determine if he was ok. He then asked Young how much he was drinking earlier. After Young did not respond, Officer Cavazos asked if it was one or two beers, to which Young responded in the affirmative. He then asked what kind of beer, and Young responded Lone Stars. He then asked Young when he last ate, and, after some back and forth explaining why Officer Cavazos was asking, Young stated he ate chicken hours earlier.

Eventually Young indicated he felt queasy, and Officer Guerrero asked if he needed EMS, but Young declined. Officer Cavazos testified that, at this point, he would not have let Young drive away given his suspicion Young had been drinking and the chance Young could injure himself or someone else.

After approximately nine minutes of questioning Young, Officer Cavazos left Officer Guerrero and Young and backed up his patrol unit several feet away. He then returned to where Young and Officer Guerrero were and asked Young if he was willing to undergo a standard field sobriety test, to which Young responded "sure." Officer Cavazos then commenced a field sobriety test directly in the center of the patrol unit camera. At the conclusion of the field sobriety tests, Officer Cavazos concluded Young failed, and he placed him under arrest for a DWI. Officer Cavazos further testified that after he arrested Young he walked into the Denny's and spoke with the manager and confirmed that Denny's personnel could have helped Young if he needed it.

After the Schertz police officers testified, defense counsel argued the encounter from the beginning, was a seizure, not consensual. He further contended that, upon seizing Young and his vehicle, and thereafter asking Young to exit the vehicle, the officer was not motivated by community caretaking but instead immediately commenced investigating a DWI. He pointed to evidence of Young's lack of distress, location in a well-lit parking lot of a restaurant, access to assistance, and that he was not a danger to others. The State argued it was not entirely relying on the community caretaking function, but it contended Officer Cavazos was performing the function at the beginning of the encounter with Young when he asked Young if he was alright. It argued the encounter was actually a consensual encounter and, in support, pointed to the fact that the officer did not commence conducting a DWI investigation until after he developed reasonable suspicion. It contended Officer Cavazos developed reasonable suspicion after Young exited the vehicle, and Officer Cavazos smelled alcohol on Young and saw Young was disoriented. It further argued the encounter was consensual because the officer did not activate lights and sirens.

Based on the foregoing, the trial court's findings and conclusions were based on two independent theories of law applicable to the case: (1) whether the encounter between Officer Cavazos and Young was a consensual encounter that escalated into a lawful detention after the officer developed reasonable suspicion of a DWI and (2) whether Officer Cavazos was acting in his community caretaking capacity when he encountered Young and detained him from the outset of the encounter and whether the community caretaking function ceased, making his detention of Young unlawful. *Compare Monjaras v. State*, 664 S.W.3d 921, 927 (Tex. Crim. App. 2022) (providing police-citizen consensual encounter *did not implicate* Fourth Amendment); *with Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999) (providing community caretaking function *an exception* to Fourth Amendment's warrant requirement for seizure where officer's primary motive is concern for individual's well-being).

Specifically, the trial court made the following findings of fact:

2. Officer Cavazos responded to an anonymous 911 caller's report for a welfare concern. The unverified caller described a vehicle with the driver asleep at a traffic light and putting the vehicle in reverse.

3. Officer Cavazos located a vehicle substantially matching the description parked behind a business building with the driver's door open. There were no other vehicles parked on either side of the defendant. The Officer parked his patrol unit behind the vehicle and approached Mr. Young who was sitting in the driver's seat of the vehicle with the key not in the ignition. Mr. Young reasonably matched the description provided by the anonymous caller.

4. During the initial contact with Mr. Young, Officer Cavazos testified that Mr. Young did not appear to be in distress and did not exhibit any signs of intoxication. The Court finds that Officer Cavazos was initially motivated by a community caretaking purpose when he approached Mr. Young.

5. The Court finds that Officer Cavazos testified Mr. Young was not in distress and thus had no credible factual basis to believe and did not believe that Mr. Young needed help or was in distress. There was no apparent car trouble, medical problem, or any other need for assistance.

6. Mr. Young was lawfully parked in a safe parking lot of two commercial businesses, Denny's Restaurant and a gas station, that were open for business around 8:15 pm.

7. Mr. Young had access to assistance in the event it was needed as he had his cell phone and was parked near the businesses.

8. Officer Cavazos did not believe and had no factual basis to believe that Mr. Young presented a danger to himself or others.

9. The Court finds that Mr. Young yielded to the Officer's display of authority by answering his questions and responding to his commands. The Court finds that however the initial encounter is characterized, the Officer's questions asked after Mr. Young stepped out of his vehicle were designed and intended to investigate criminal activity rather than check on Young's welfare and that no reasonable person would believe that they were free to disregard either the Officer's initial or subsequent questions and leave. Specifically, the Officer's questions concerning where Mr. Young was going to and coming from and questions related to drinking were designed and intended to investigate criminal activity, not to check on Mr. Young's welfare. These questions and the Officer's statements on the video demonstrate to this court that the officer's primary motivation at that point was to investigate potential criminal activity.

10. The Court finds that there was no credible basis to escalate and expand the initial contact, however it is characterized, into a DWI investigation.

The court then made the following conclusions of law:

11. Mr. Young was seized within the meaning of the Fourth Amendment as a reasonable person would not feel free to disregard Officer Cavazos, a uniformed police officer in a marked patrol vehicle parked directly behind him making it impossible to leave, and go about his business. Mr. Young was detained when he acquiesced to the Officer's show of lawful authority both at the inception of it and during the time it continued following the Officer's initial determination that Young was not in distress. Considering the officer's conduct as well as the setting and circumstances, the Court concludes that this was not a consensual encounter and a detention occurred.

12. Officer Cavazos reasonably seized Mr. Young initially through the exercise of his community caretaking function. However, once the Officer made the determination that Mr. Young was not in distress, the community caretaking function ceased to apply. The Court finds that there was no evidence to support a reasonable belief that Mr. Young needed help based on the four non-exclusive factors of (1) the nature and level of distress exhibited by the individual, (2) location of the individual, (3) whether the individual was alone or had access to assistance and (4) to what extent the individual presented a danger to himself or others when the Officer asked Mr. Young to exit the vehicle.[1]

13. There was no reasonable suspicion or probable cause to seize Mr. Young when the Officer determined that Mr. Young was not in distress and the community caretaking function ceased to apply. All evidence thereafter obtained as a result of the unlawful detention was unlawfully obtained and is suppressed.

In other words, the trial court concluded that there was no consensual encounter, and the community caretaking function ceased to apply almost immediately after the initial seizure, with Officer Cavazos thereafter unlawfully detaining Young.[2]

---

[1] The trial court's findings addressing these factors are from the Court of Criminal Appeal's decision in *Wright v. State*, which identified the factors as useful in determining whether a police officer was acting reasonably pursuant to the officer's community caretaking function "in stopping an individual to determine if he needs assistance." *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999).

[2] *Compare Monjaras v. State*, 664 S.W.3d 921, 926 (Tex. Crim. App. 2022) (providing police-citizen interaction not consensual and not subject to Fourth Amendment and thereafter transforms into detention if, based on totality of circumstances, officer, through show of force, restrains citizen to point that objectively reasonable person would not feel free to decline officer's requests or terminate encounter) with *Byram v. State*, 510 S.W.3d 918, 922 (Tex. Crim. App. 2017) (providing police officer may reasonably seize individual through exercise of community caretaking function—an exception to Fourth Amendment's warrant requirement—if officer not primarily motivated by detection, investigation, and acquisition of evidence relating to crime—if, under totality of circumstances, reasonable person would believe individual was in need of help; determination made through two-step inquiry: (1) whether officer was primarily motivated by community-caretaking purpose; and (2) whether officer's belief individual needed help was reasonable).

**ON APPEAL**

On appeal, the State challenges the trial court's findings and conclusions arguing the initial contact up until the point where he smelled the odor of alcohol was a consensual encounter that did not implicate the Fourth Amendment. It further contends, once Officer Cavazos smelled the odor of alcohol during the consensual encounter, he had reasonable suspicion to transform the encounter with Young into a lawful investigative detention for driving while intoxicated. Young argues the trial court properly concluded that, after Officer Cavazos's community caretaking function had ended, the encounter escalated into an unlawful investigative detention.

**STANDARD OF REVIEW**

We review the trial court's order granting Young's motion to suppress for an abuse of discretion. *See, e.g.*, *State v. McGuire*, 689 S.W.3d 596, 601 (Tex. Crim. App. 2024). We "[a]lmost complete[ly] defer[]" to the trial court's "determination of historical facts and its rulings on the application of law to those questions of fact." *Id.*; *see, e.g.*, *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012) ("When reviewing a trial court's findings of fact and conclusions of law regarding a motion to suppress evidence, an appellate court must give almost total deference to the trial court's assessment of historical facts."). We afford the trial court the same deference "in deciding mixed questions of law and fact that are based on an assessment of credibility and demeanor." *McGuire*, 689 S.W.3d at 601. We review the trial court's legal rulings de novo. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). During our review, "we assume that the trial court credited or discredited witness testimony in whatever way supports its decision." *Id.* But "if evidence is conclusive, such as indisputable video evidence, we may disregard any trial court findings inconsistent with the conclusive evidence." *Monjaras v. State*, 664 S.W.3d 921, 926 (Tex. Crim. App. 2022).

Notably, if the trial court's ruling is correct on any theory of law applicable to the case and reasonably supported by the evidence, we will uphold the ruling. *See, e.g.*, *McGuire*, 689 S.W.3d at 602; *State v. Copeland*, 501 S.W.3d 610, 613 (Tex. Crim. App. 2016); *see, e.g.*, *Walker v. State*, 676 S.W.3d 213, 224 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (concluding findings and conclusions, unchallenged by appellant, supported by record); *Barnett v. State*, 469 S.W.3d 245, 250 (Tex. App.—Fort Worth 2015, pet. ref'd) (concluding sole point of error on appeal must be overruled because appellant failed to challenge ground stated by trial court in its findings of fact and conclusions of law and finding supported by law and facts as determined at suppression hearing). For that reason, "if the appellant fails to argue a theory of law applicable to the case on appeal, that argument is forfeited." *Mixon v. State*, 523 S.W.3d 765, 767 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd.) (*quoting Copeland*, 501 S.W.3d at 613) (holding State procedurally defaulted by failing to advance argument that could have supported trial court ruling, even where trial court did not find that theory of law dispositive). "Under these circumstances, the court of appeals will uphold the trial court's ruling without considering the merits of the unchallenged basis for the ruling." *Id.* at 767–78 (*citing Copeland*, 501 S.W.3d at 614). But "if a legal argument was not a theory of law applicable to the case, then the appellant has no obligation to preserve that argument for appeal." *Id.* Procedural default rules apply equally to the State as appellant. *See Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013).

### STATE PROCEDURALLY DEFAULTED, OR FORFEITED, A THEORY OF LAW APPLICABLE TO THE CASE

Here, the State does not address the trial court's findings and legal conclusions addressing the cessation of Officer Cavazos's community caretaking function followed by the unlawful detention thereafter. We must therefore determine whether this is a theory of law applicable to the case, supported by evidence in the record.

We consider a theory of law applicable to a given case if the theory was presented at the trial-court level in such a manner that it was litigated with evidence presented by the parties. *Copeland*, 501 S.W.3d at 613. Specifically, we will look to see if the argument was argued at the hearing on the motion to suppress, whether evidence was presented relating to the theory of law at the hearing, and whether the court made any findings with regard to it in support of its ruling. *See Mixon*, 523 S.W.3d at 767. Here, all three factors weigh in favor of us holding the State procedurally defaulted, or forfeited, a theory of law applicable to the case.

First, the argument was advanced by Young in his motion and at the hearing, and the State responded to same. Young further advances the argument here, but the State failed to even respond to the argument with a reply brief. Second, as recounted above, evidence was presented at the hearing going to whether the officer was engaged in a community caretaking effort, when that ended, and whether there was a basis to move into a lawful investigative detention. And, finally, the trial court's findings clearly address the question of whether the officer was engaged in a community caretaking function and whether that effort appropriately turned into a lawful investigative detention. Specifically, the trial court made findings that Young was seized through the exercise of the officer's community caretaking function and that, once Officer Cavazos determined Young was not in distress, the community caretaking function ceased to apply, leaving no basis upon which to continue investigating.

As well, the trial court's ruling regarding the community caretaking function is reasonably supported by the evidence. *See State v. McGuire*, 689 S.W.3d 596, 601 (Tex. Crim. App. 2024); *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012); *Monjaras*, 664 S.W.3d at 926. Specifically, Officer Cavazos testified he was dispatched for a "welfare concern," he "pull[ed] up behind" Young's vehicle, blocking his ability to reverse his vehicle and pull out of that spot and drive away. As he approached the vehicle, Officer Cavazos had his right hand on his holstered

firearm. Thereafter, he testified Young did not appear to be in any distress, responding he was "okay" to Officer Cavazos. Within thirty seconds of encountering Young, Officer Cavazos asked Young to do him a favor and "step out of the vehicle and come talk to [him]." Finally, Officer Cavazos testified that before asking him to step out of the vehicle he did not learn anything to suggest Young was intoxicated or otherwise observe anything suggesting Young engaged in any traffic violation or committed a crime. And after Young stepped out of the vehicle, Officer Cavazos admitted he "was trying to determine if there was anything going on besides just his health."

Because the State does not argue the community caretaking exception theory of law on appeal, it has forfeited the issue. *See Copeland*, 501 S.W.3d at 613; *Mixon*, 523 S.W.3d at 769; *accord Marsh v. State*, 343 S.W.3d 475, 479 (Tex. App.—Texarkana 2011, pet. ref'd) ("An appellant must attack all independent grounds supporting a trial court's ruling."). Because the State failed to challenge on appeal all independent grounds supporting the trial court's ruling, we must affirm the trial court's order.

## CONCLUSION

We affirm the trial court's June 14, 2024 order granting Young's motion to suppress.

Lori Massey Brissette, Justice

DO NOT PUBLISH